## Town of Glover v. David V. Anderson, Auditor of Accounts

[134 A2d 612]

May Term, 1957.

Opinion Filed September 3, 1957.

*Lee E. Emerson* for the petitioner.

*Frederick M. Reed*, Attorney General, and *Stephen B. Richardson*, Deputy Attorney General, for the petitionee.

**Adams, J.** This is a petition for a writ of mandamus to compel the petitionee as Auditor of Accounts to issue his warrant to reimburse the petitioner, the Town of Glover, for $565.00 expended for the care and support of Walter Place, an alleged non-settled poor person.

The parties have filed a stipulation of agreed facts in substance, as follows:—Walter Place was born in Holland, Vermont, April 30, 1908. He is a person of sub-normal mentality, of the mental age of approximately eight years, a moron and incapable of establishing a settlement in his own right. He resided with his mother in the town of Glover from 1916 to the date of her death on May 1, 1953 and her residence and pauper settlement was in that town. After the death of his mother, Place was placed under guardianship and from that date until August 5, 1956, there were sufficient funds in the guardianship estate to provide for his

care and support. Since that date the town of Glover has been required to provide for his care and support. On October 26, 1956, by a notice that was in proper form and timely, said town notified the Auditor of Accounts and the Commissioner of Institutions that it would seek reimbursement from the state of Vermont for aid furnished Place. November 15, 1956, on a form provided by the state, a claim for reimbursement for $260.00 was made. On March 21, 1957, the date of the petition herein, the town had expended $565.00 in providing for the care and support of Place. The petitionee, as Auditor of Accounts, disallowed the claim upon the ground that Place was not a non-settled person for whose care the state is ultimately responsible because he has a pauper settlement in the town of Glover.

The petitionee filed a motion to quash and an answer. We are not required to consider the answer because of the agreed statement of facts. The motion to quash is based upon two grounds:—(1) That the obligation of the state to reimburse the petitioner is not clearly established by law, depending upon the interpretation of the statutes as to whether or not Place may or may not have a settlement in the town of Glover, so the consequent duty of the petitionee is not clear and the writ will issue only when the petitioner has a clear legal right to the performance of the particular duty and when it appears that the law affords no other remedy. (2) That the petitioner has a full, adequate and complete remedy by way of declaratory relief and such relief is a bar to mandamus action.

▓ It is fundamental that in order to justify the issuance of a writ of mandamus, it must appear that the petitioner has a clear legal right to the performance of the particular duty at the hands of the petitionee and that the law affords no other adequate remedy. *Matter of Savage*, 112 Vt 89, 92, 22 A2d 153, and cases cited.

▓ Mandamus lies in a proper case to enforce the performance of a ministerial act by a public official. *Gaffney* v. *Commissioners of Jail Delivery*, 111 Vt 196, 200, 13 A2d 192. If the duty is one that necessarily involves an inquiry of

fact and an exercise of judgment on the case presented, it is not considered ministerial but discretionary and the disposition of it made by the official will be binding upon the courts. *Proctor* v. *Hufnail*, 111 Vt 365, 369, 16 A2d 518. A decision that rests solely upon the construction of a statute does not involve that exercise of judgment which the law contemplates. *State* v. *Howard*, 83 Vt 6, 14, 74 A 392. See *Peck* v. *Powell*, 62 Vt 296, 19 A 227; *Fay* v. *Barber*, 72 Vt 55, 47 A 180; *Carpenter's Admr.* v. *Brown*, 118 Vt 148, 102 A2d 331.

, This points up the question involved here. Did or did not Walter Place, under the pertinent statutes, have a pauper settlement in the town of Glover in 1956?

Under our former pauper law unemancipated minors living with and supported by their parents did not acquire a pauper residence in their own right. They were deemed incapable of exercising any choice or volition of their own. *Marshfield* v. *Tunbridge*, 62 Vt 455, 457, 20 A 106. For the same reason it was held that a person who is mentally defective is incapable of any choice or intention as to residence and while living with his parents did not acquire a residence in his own right. Upon the death of the father, who was the head of the family, the mentally incompetent son who was living in the family had no pauper settlement, there being no such thing as a derivative residence. *Fairfax* v. *Westford*, 67 Vt 390, 392, 393, 31 A 847. The matter of impaired intellect was also recognized in *Westmore* v. *Sheffield*, 56 Vt 239, 244; *Topsham* v. *Chelsea*, 60 Vt 219, 222-223, 13 A 861; *Rowell* v. *Vershire*, 62 Vt 405, 409, 19 A 990, 8 LRA 708; *Danville* v. *Hartford*, 73 Vt 300, 50 A 1082.

There being no such thing as a derivative settlement, a married woman, who was not considered *sui juris*, could not acquire a settlement in her own right. Upon the decease of her husband she did not, therefore, take the settlement that he had while they were living together. *Jericho* v. *Morristown*, 77 Vt 367, 369-370, 60 A 233, decided in 1906. The legislature at its next session by No. 102 of the Acts of 1906 provided that a married woman living with her husband in a town where he last resided for three years supporting

himself and family shall be deemed to have gained a pauper residence in such town. This statute with some modifications and additions is now V. S. 47, §7099 and a part of Chapter 303.

In *St. Johnsbury* v. *Sutton*, 102 Vt 451, 150 A 133, this Court had before it the pauper settlement of four children by a first marriage when the father had died and the mother had remarried. It was there held, at page 455, that the children did not retain their father's residence, citing *Fairfax* v. *Westford, supra,* 67 Vt 390, 31 A 847. It was also held that No. 102 of the Acts of 1906 related to the residence of the wife only and had no effect upon that of the children.

The petitionee concedes in his brief that Place, the pauper in the instant case, according to the holding in *Fairfax* v. *Westford, supra,* would have had no pauper settlement in the town of Glover upon the death of his mother in 1953. He says, however, that in 1947, there was a material revision of the statutes in regard to the settlement of minors. He refers us to No. 202 of the Acts of 1947 by which, what are now V. S. 47, §§7100, 7101 and 7104, upon which he relies, were enacted. These sections so far as material here provide:—"§7100. The settlement of a minor child born in wedlock shall be that of his parents or surviving parent * * * ." "§7101. In the event of the death of the parent having the custody of such minor child, the settlement of such minor shall be that of the surviving parent. In case both parents die * * * the settlement of such minor at the time of such death * * * shall continue until his majority or until he shall gain a separate settlement as provided in section 7103." "§7104. A minor upon reaching his majority shall continue to have the settlement he acquired as a minor or until he gains a separate settlement." Then follows a provision in this section about the settlement of one enlisting or inducted into the military service.

The petitionee claims that by these statutory changes in the law in 1947, it is clear that it was the intent of the legislature to give to minors a settlement which continues until they acquire a separate settlement in their own right. We agree with him as to that premise. He says that because of

these statutory changes, although Place reached his majority in 1929, that because he was a mentally defective and unable to gain a separate settlement, the settlement that he gained as a minor prior to 1929 continued indefinitely and was not lost when his mother died. In other words he says that, although Place became of age in 1929, he was still considered a minor because he was a mental defective and, therefore, unable to gain a settlement in his own right. We do not agree.

It should be noted here that section 7102 provides for the settlement of a minor born out of wedlock and section 7103 provides how a minor may gain a separate settlement. These five sections are all a part of chapter 303 pertaining to the relief of the poor.

Sections 7100-7104 inclusive refer to minors only except that part of section 7104 referring to persons entering the military service by reason of enlistment or induction. If the mother had died subsequent to 1929, when Place became of age and prior to 1947 when the foregoing sections became effective, his settlement with his mother would have been at an end as conceded by the petitionee. His settlement acquired from his mother continued after 1929, not because he was a minor but because he was a mental defective. The sections of the statutes that became effective in 1947, upon which the petitionee relies, apply to minors only. Place was not a minor at that time.

■ We hold that "minor" or "minor child" as used in these sections do not include a non-compos or mentally defective person who had reached his majority before the effective date of the statutes. If the legislature had so intended, it could have said so and included such persons. As was said by Rowell, C. J. in *Morristown* v. *Hardwick*, 81 Vt 31, 33, 69 A 152, "But care must be taken in construing statutes by implication, lest a wild olive be grafted in, and a statute cannot be thus extended beyond what is necessary to accomplish its purpose." It follows that Place did not have a pauper settlement in the town of Glover in 1956. He was a non-settled person at that time.

Did the petitioner have a clear legal right to have the bill presented to the petitionee for the care and support of Place paid by the state? Included in the definitions in section 7097, chapter 303, is; "State charge; poor person who has no settlement in a town in this state;", also, "Non-settled person; a person who has no settlement in a town in this state;". Section 7106 provides in part; "The overseer shall relieve state charges and transient persons found or residing in his town and having no settlement in the state and such town shall be reimbursed by the state as provided in this chapter." Section 7109 provides for notice to the overseer and also to the commissioner if the poor person is a state charge.

The parties have raised a question about section 7110 having been amended in 1951 but it does not seem necessary to discuss its effect here, if any, for the petitionee in his brief after mentioning it and that part of section 7106 heretofore quoted says; "We agree with the petitioner that the legislature did not intend to deny reimbursement to the town in cases of non-settled persons." He also says; "The defendant concedes that the legislature intended that towns be reimbursed by the state in such cases as stated above." Furthermore, the agreed facts show that the notice to the petitionee and the commissioner was in proper form and timely; that the claim filed on November 15, 1956 for $260. was on a form provided by the state and that the petitionee disallowed the claim upon the ground that Place was not a non-settled person for whose care the state is responsible because he has a pauper settlement in the town of Glover, the petitioner here.

We conclude and hold upon the facts here and under chapter 303, V. S. 47, that Place is a state charge and the petitionee as the proper state official has the clear and legal duty to issue his warrant to reimburse the petitioner. Compare, *Parker* v. *Anderson*, 112 Vt 371, 25 A2d 41.

The remaining question is:—Did the petitioner have a full adequate and complete remedy by way of declaratory relief which is a bar to mandamus action? The petitioner in discussing this question says in his brief that he has been

unable to find any case in this jurisdiction dealing with the adequacy of a declaratory judgment action and he cites none from other jurisdictions. He calls our attention to three cases from this jurisdiction where mandamus was refused, as he says, on the ground of another adequate remedy. The first is *Rowell* v. *Tunbridge*, 118 Vt 23, 98 A2d 72. There the writ was refused because a case involving the same subject matter and the same parties was then pending in another court. The second is *West Rutland* v. *Rutland Railway L. & P. Co.*, 96 Vt 413, 121 A 755. There the writ was refused because the Public Service Commission had primary jurisdiction of the matter. The third is *Farr* v. *St. Johnsbury*, 73 Vt 42, 50 A 548. There the town had adopted a resolution directing the selectmen to issue an order to the petitioner for $300. as compensation for damages allegedly caused to a spring by excavating for a schoolhouse. The selectmen refused to issue the order on the ground that the petitioner had no legal claim against the town and that the voters acted without authority. The petition for a writ of mandamus was dismissed and the writ refused on the ground that if the petitioner had a legal claim he had an adequate remedy in an action at law to recover it. The opinion in that case contains seven lines in our printed reports. It is not sufficiently persuasive so that we are inclined to use it as a precedent for dismissing the petition in the instant case and thus relegating the petitioner to bringing an action for declaratory relief.

On the facts in the instant case, mandamus affords a plain, speedy and adequate remedy. It is practical, efficient and prompt in its administration toward the result sought to be accomplished. In order to supersede mandamus, the other remedy must be competent to afford relief on the very subject matter in question, and be equally convenient, beneficial and effective. 55 CJS, Mandamus, §17 (b), p. 47-49. An action for a declaratory judgment does not meet this test. It therefore does not take the place of a petition for and a writ of mandamus as here used. *Leahey* v. *Department of Water & Power of the City of Los Angeles*, 76 Cal App 2d 281, 173 P2d 69; *Farmers & Merchants Bank of Cochrane, Wis.* v.

*Billstein*, 204 Minn 224, 283 NW 138. The Declaratory Judgment Act was designed to supply deficiencies in legal procedure which existed before the enactment of the statute. It was not intended as a substitute for ample remedies in use before its adoption. *Lisbon Village District* v. *Lisbon*, 85 NH 173, 155 A 252; *Bell Tel.* v. *Lewis*, 313 Pa 374, 169 A 571. See *Ellis* v. *Cannon*, 113 Vt 511, 516, 37 A2d 377.

*Judgment that the prayer of the petition be granted without costs and that a mandate issue directing the petitionee as Auditor of Accounts to issue his warrant for the sum of five hundred fifty-six dollars in favor of the petitioner.*